

# EXHIBIT A

# Commonwealth of Massachusetts

BRISTOL, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. *2073 CV 00368*

*Shannon Montigny* , PLAINTIFF(S),

v. *Southcoast Health System, Inc., et al* DEFENDANT(S)

A True Copy
Attest
Constable & Disinterested Person
*nrk + Aluj 6/29/20*

*System, Inc.*

### SUMMONS

THIS SUMMONS IS DIRECTED TO *Southcoast Health* . (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the *Bristol City. Sup.* Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:
   a. Filing your signed original response with the Clerk's Office for Civil Business, *Bristol City* Court, *see enclosed* (address), by mail or in person, **AND**
   b. Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: *49 Wood Ave., Barrington, RI 02806*

3. **What to include in your response.** An **"Answer"** is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4. **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5. **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _6 - 15_____, 20_20_ (SEAL)

Marc J. Santos
Clerk-Magistrate

**Note:** The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

_____

_____

_____

Dated: _____, 20___          Signature: _____

**N.B.    TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX – BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.



# EXHIBIT B

COMMONWEALTH OF MASSACHUSETTS

BRISTOL, SS                                    SUPERIOR COURT DEPARTMENT

SHANNON MONTIGNY,
*Plaintiff, on behalf of herself and all persons
similarly-situated,*

v.                                                              C.A. NO. _____

SOUTHCOAST HEALTH SYSTEM, INC.,
KEITH HOVAN, AND WADE BROUGHMAN,
*Defendants.*

## COMPLAINT

### I. PARTIES

1. Plaintiff Shannon Montigny used to work for Defendant Southcoast Health System, Inc., and resides in Bristol County, Massachusetts.

2. Defendant Southcoast Health System, Inc. ("Southcoast") is a Massachusetts nonprofit corporation with a principal place of business at 101 Page Street in New Bedford, Massachusetts.

3. Jurisdiction in this Court is proper because the vast majority of events giving rise to this Complaint occurred in the Commonwealth of Massachusetts.

### II. FACTS

4. According to Rule 8(e) of the Massachusetts Superior Court Rules of Civil Procedure, Ms. Montigny does not need to recite every fact here. She is required to keep her allegations "simple, concise, and direct."

5. Additionally, Ms. Montigny is allowed to make alternative claims.

6. Ms. Montigny is a registered nurse and received her certification in 2004.

7. In approximately 2002, Southcoast first hired Ms. Montigny as a nurse intern in Southcoast's Charlton Memorial Hospital.

8. In approximately 2008, Ms. Montigny left Southcoast's employment on maternity leave.

9. In 2009, Ms. Montigny applied for, and was hired for, a position at the Visiting Nurses Association of Southeastern Massachusetts ("VNASM"). Ms. Montigny began work on December 15, 2009.

10. Soon thereafter, VNASM was acquired by Southcoast, making Ms. Montigny a Southcoast employee again.

11. Ms. Montigny worked as a nurse for Southcoast's visiting nurses association ("VNA"), on the palliative and hospice care team.

12. The VNA's services are provided in patients' homes, in nursing homes, assisted living centers, group homes, and inpatient hospitals.

13. Ms. Montigny's job was providing palliative care and hospice health care services to patients across southeastern Massachusetts and in neighboring parts of Rhode Island. Ms. Montigny also had responsibility for dropping off labs, samples, and cultures to hospitals or labs. Ms. Montigny was responsible for picking up supplies as needed from the VNA's home office in Fairhaven, Massachusetts.

14. Ms. Montigny worked independently, driving to see patients in many different types of locations in order to provide services. Almost all of Ms. Montigny's day was working in different locations in Massachusetts and Rhode Island, or driving between them.

15. In 2016, Ms. Montigny was assigned to a territory which included the Westport, Massachusetts, area, and towns in eastern Rhode Island, including Newport, Middletown, Portsmouth, Little Compton, and Tiverton. This was Southcoast's most expansive

territory. Ms. Montigny had patients in Dartmouth and Fall River areas on occasion, as well.  When working weekends, Ms. Montigny had to attend to patients across all of Southcoast's territories, sometimes as far east as Cape Cod.

16. The VNA established Ms. Montigny's schedule.  Southcoast gave Ms. Montigny and similarly-situated nurses freedom to take care of personal or family business when they were not at a patient's location.

17. Like almost all nurses at Southcoast, Ms. Montigny was required to document her observations of her patients' health, and document all services she provided to her patients.  This documentation is known as "charting."

18. Because Southcoast used electronic medical records and electronic time-keeping software, Southcoast had the ability to monitor how long it took Ms. Montigny and the Class Plaintiffs to chart each week.

19. Ms. Montigny, like many similarly-situated nurses at Southcoast, completed most of her charting at night after her home visits were over, or on weekends.  In addition, when not scheduled to work on a weekend, Ms. Montigny nevertheless sometimes had to work on Sunday to check on tests or labs requested for a patient, or to monitor patients' progress, to read weekend nurses' notes, and/or check for any changes in patients' conditions, medications or treatment regimens.  This weekend work was essential because it was impossible to punch in seven minutes prior to 8am the next day, look all this information up, rearrange her schedule for the day, research any new admissions that were assigned over the weekend, read all emails and messages, and coordinate with the office on visits.

20. Ms. Montigny, like all similarly-situated nurses at Southcoast, did not have time to complete all charting during home visits because of the great number of home visits

Southcoast required nurses to complete every work day, and due to the high acuity of the patients requiring extended periods of time at visits.

21. In addition, sometimes Ms. Montigny and similarly-situated nurses had to travel significant distances to get to the next patient. Such travel time made it impossible for Ms. Montigny and similarly-situated nurses to complete charting before seeing their last patient of the day.

22. Ms. Montigny and similarly-situated nurses did not have an office to report to. At the beginning of the work day, they went directly from their own homes to the home of their first patient. Ms. Montigny and similarly-situated nurses did not have to report to an office at the end of the day. Essentially, Ms. Montigny worked out of her car.

23. It was well known that Southcoast gave Ms. Montigny and similarly-situated nurses the freedom to complete charting whenever they wanted. So long as Ms. Montigny and similarly-situated nurses completed their home visits as scheduled, Ms. Montigny and similarly-situated nurses had the freedom to set their own work hours, and could take care of personal or family matters if they had time between appointments or after their last appointment of the day.

24. In fact, in approximately November, 2019, the CEO of Southcoast's VNA, Sharon Jones, made it clear in the course of union contract negotiations that it was well-known that since care providers at the VNA could not possibly finish their job during working hours, Southcoast gives VNA care providers the flexibility to take care of personal and family matters after seeing the last patient.

25. In approximately 2013, Southcoast asked Ms. Montigny to "precept" or mentor nurses newly hired to Southcoast's VNA.

4

26. Beginning in approximately 2016, Southcoast started increasing the number of patients each nurse had under his or her care.

27. Periodically, Ms. Jones and Ms. Montigny's manager, Robin Pelletier, informed Ms. Montigny and similarly-situated nurses that they could not work overtime or had to work less overtime.

28. On top of that, from approximately 2016 to 2019, Southcoast asked Ms. Montigny to precept new nurses and required Ms. Montigny to allow Salve Regina nursing students to shadow her on visits, regardless of her caseload.  This precepting and teaching was an additional load on her day.  Ms. Montigny and her co-workers had many required in-service trainings, weekly IDT meetings lasting as long as about four hours, skills days, and any other trainings

29. Ms. Pelletier also asked Ms. Montigny to run meetings in Ms. Pelletier's absence.

30. Starting in approximately 2016, after Ms. Pelletier was hired, Ms. Montigny informed Ms. Pelletier that Southcoast was requiring VNA nurses to treat and take responsibility for too many patients at the same time.

31. Ms. Montigny and similarly-situated nurses at the VNA were supposed to be responsible for a total of 14-16 patients at a time.  Under Ms. Pelletier, Southcoast increased care providers' patient load, giving Ms. Montigny upwards of 23 patients at a time.  Once, Southcoast gave Ms. Montigny as many as 31 patients at a time—in addition to a new nurse to precept.

32. Ms. Montigny informed Southcoast that the hospital requiring Ms. Montigny and similarly-situated nurses to take care of so many patients at the same time was dangerous for patients, violated regulations, and fell below the standard of care in the industry.

33. Ms. Montigny informed Southcoast that the hospital requiring Ms. Montigny and similarly-situated nurses to take care of so many patients at the same time made it impossible for Ms. Montigny and similarly-situated nurses to fulfill their professional duties.

34. Southcoast claimed that providers' caseloads would diminish with new hires, but the hiring of care providers was never sufficient to make a difference.

## COUNT ONE
## FMLA RETALIATION
### *Montigny v. Southcoast*

35. Plaintiffs repeat an incorporate by reference all allegations above and below as if restated here in full.

36. Starting on approximately March 26, 2018, Ms. Montigny had to take time off intermittently from work at Southcoast for anxiety and back pain.

37. Ms. Montigny requested intermittent family medical leave protected under the Family Medical Leave Act ("FMLA").

38. Southcoast approved Ms. Montigny's intermittent FMLA leave for a one-year period.

39. In the summer of 2019, Ms. Montigny applied for almost 30 new positions within Southcoast and, except for one position, never even got a call for an interview.

40. Then, in August, 2019, Ms. Montigny applied for two weeks of continuous leave under the FMLA for anxiety due to the unreasonable case load. Southcoast required Ms. Montigny to see an Employee Assistance Program counsellor and required Ms. Montigny to be cleared for work by that counsellor before she could return to work. This requirement added a week onto her leave.

41. Ms. Montigny's continuous FMLA leave began on August 16, 2019.

42. Defendants did not like the fact that Ms. Montigny took FMLA leave.

43. In approximately September, 2019, Ms. Montigny returned to work from continuous FMLA.

44. Southcoast did not interview or hire Ms. Montigny for a new position in 2019 because she took FMLA leave in 2008 and 2019, causing her damages.

45. Southcoast did not have a legal justification for not interviewing or hiring Ms. Montigny for a new position in 2019.

46. Southcoast fired Ms. Montigny on December 11, 2019.

47. Southcoast did not have a legal justification for terminating Ms. Montigny's employment.

48. Southcoast fired Ms. Montigny because she took FMLA leave in 2018 and 2019, causing her damages.

Wherefore, Ms. Montigny asks this Honorable Court to find in her favor, award her damages including but not limited to, back pay, liquidated damages, interest and attorneys' fees, and all other relief this Court deems just and mete under the FMLA.

### COUNT TWO
### RETAILATORY TERMINATION IN
### VIOLATION OF PUBLIC POLICY
*Montingy v. Southcoast*

49. Plaintiffs repeat an incorporate by reference all allegations above and below as if restated here in full.

50. Ms. Montigny's complaints to Southcoast regarding its decision to dangerously increase the number of patitents under Ms. Montigny's care constituted Ms. Montigny's protest of the hospital's dangerous practices.

51. Ms. Montigny's complaints to Southcoast regarding its decision to dangerously increase the number of patients under Ms. Montigny's care was a protest of Southcoast falling below the standard of care for patients in palliative and hospice care.

52. Ms. Montigny's complaints to Southcoast regarding its decision to dangerously increase the number of patients under Ms. Montigny's care was a protest of Southcoast violating state statutes and regulations requiring Southcoast and its nurses to provide minimum levels of safe and proper care to its patients.

53. Ms. Montigny's complaints to Southcoast regarding its decision to dangerously increase the number of patients under Ms. Montigny's care was a protest of Southcoast's requiring Ms. Montigny to violate the regulations requiring Ms. Montigny to provide minimum levels of safe care to the patients she serves.

54. Southcoast did not like Ms. Montigny's complaints to Southcoast regarding its decision to dangerously increase the number of patients under Ms. Montigny's care.

55. Southcoast did not interview or hire Ms. Montigny for a new position in 2019 because of her complaints.

56. Southcoast fired Ms. Montigny because she complained to Southcoast regarding its decision to dangerously increase the number of patients under Ms. Montigny's care.

57. Southcoast's termination of Ms. Montigny's employment because she complained to Southcoast regarding its decision to dangerously increase the number of patients under Ms. Montigny's care was a violation of public policy for which Southcoast is liable.

Wherefore, Ms. Montigny asks this Honorable Court to find in her favor, award her

damages including but not limited to, back pay, liquidated damages, interest and

attorneys' fees, and all other relief this Court deems just and mete.

## COUNT THREE
### RHODE ISLAND WHISTLEBLOWER PROTECTION ACT
*Montingy v. Southcoast*

58. Plaintiffs repeat an incorporate by reference all allegations above and below as if restated
    here in full.

59. Ms. Montigny performed some of her work for Southcoast in the state of Rhode Island.

60. Southcoast's decision to dangerously increase the number of patients under Ms.
    Montigny's care caused unacceptable danger to the parties' patients residing and being
    treated in the State of Rhode Island.

61. Ms. Montigny's complaints to Southcoast regarding its decision to dangerously increase
    the number of patients under Ms. Montigny's care was a protest of Southcoast's violation
    of Rhode Island regulations governing nurses' and hospitals' minimum levels of care.

62. Southcoast did not interview or hire Ms. Montigny for a new position in 2019 because of
    her complaints.

63. Southcoast's termination of Ms. Montigny was in retaliation for Ms. Montigny's
    complaints to Southcoast regarding its decision to dangerously increase the number of
    patients under Ms. Montigny's care.

64. Southcoast's termination of Ms. Montigny in retaliation for Ms. Montigny's complaints
    to Southcoast regarding its decision to dangerously increase the number of patients under

Ms. Montigny's care constitutes a violation of the Rhode Island Whistleblower Protection

Act for which Southcoast is liable.

65. Southcoast's termination of Ms. Montigny in violation of the Rhode Island

Whistleblower Protection Act caused Ms. Montigny damages for which Southcoast is

liable.


Wherefore, Ms. Montigny asks this Honorable Court to find in her favor, award her

damages including but not limited to, back pay, liquidated damages, interest and

attorneys' fees, and all other relief this Court deems just and mete.


### COUNT FOUR
### MASSACHUSETTS PAYMENT OF WAGES ACT
### M.G.L. c. 149, §§ 148 & 150
*Montigny & Class Plaintiffs v. Defendants*

66. Plaintiffs repeat an incorporate by reference all allegations above and below as if restated

here in full.

### A. CLASS ALLEGATIONS

67. Ms. Montigny brings this claim on behalf of herself and similarly-situated nurses at

Southcoast.

68. The group of Class Plaintiffs identified herein, which, on information and belief, includes

more than 30 individuals, is so numerous that joinder of all Class Plaintiffs is

impracticable.

69. There are common questions of law and fact related to Class Plaintiffs' claims, including,

but not limited to, the policies and practices of paying Class Plaintiffs straight time pay--

or no pay-- for all hours worked and for all overtime hours worked.

70. The claims of Ms. Montigny, including claims related to overtime pay and failure to pay wages, are typical of the claims of the Class Plaintiffs. Although the Class Plaintiffs had varying hourly rates and worked different hours or shifts, they were all subjected to similar work conditions and compensation policies, under common supervision, which are at the heart of this matter.

71. Ms. Montigny will fairly and adequately represent and protect the interests of the members of the class. Her claims for unpaid overtime and other unpaid wages are typical of the claims held by the rest of the Class Plaintiffs, and they predominate over any issues raised by any additional individual claims they have. She has no known conflicts with any members of the Class Plaintiffs.

72. Ms. Montigny has retained counsel competent and experienced in class action and wage and hour litigation who will vigorously pursue this action for the benefit of all Class Plaintiffs.

73. Class certification is appropriate because the questions of law and fact common to the Class Plaintiffs predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

74. The damages of many Class Plaintiffs may be so small as to make the expense and burden of individual litigation impractical and redress of class members' harm impossible.

75. This Court will have no difficulty managing this as a class action.

76. Ms. Montigny is aware of no difficulty that will be encountered in the management of this litigation that would preclude its approval as a class

## B. MASSACHUSETTTS PAYMENT OF WAGES ACT ALLEGATIONS

77. On April 10, 2020, the Massachusetts Attorney General's office issued a notice of right to file suit to Ms. Montigny.

78. Southcoast must pay Ms. Montigny and the Class Plaintiffs wages for all hours worked.

79. Ms. Montigny and the Class Plaintiffs usually worked over 40 hours per week and were not paid for all hours they worked each week.

80. Southcoast knew of and/or permitted all of Ms. Montigny's and the Class Plaintiffs' work for Southcoast.

81. Ms. Montigny and the Class Plaintiffs had to electronically log in to perform a great deal of work for Southcoast.

82. Ms. Montigny's and the Class Plaintiff's work in patients' medical records was known and/or knowable to Southcoast.

83. Ms. Montigny and the Class Plaintiffs were told not to punch in until they arrived at their first appointment.

84. Ms. Montigny and the Class Plaintiffs had to log in and perform work at least one hour prior to arriving at their first patient's home, and often, the night before.

85. Southcoast knew Ms. Montigny and the Class Plaintiffs had to perform at least one hour of work prior to arriving at their first patient's home. This is evidenced by emails and other electronic records of work being performed prior to the work day for which Ms. Montigny and the Class Plaintiffs were paid.

86. Southcoast did not pay for the time Ms. Montigny and the Class Plaintiffs spent driving to their first appointment after performing necessary work for Southcoast at home.

87. Ms. Montigny and the Class Plaintiffs regularly charted patient visits after seeing patients and were not paid for all time charting.

88. Ms. Montigny and the Class Plaintiffs regularly had to chart patient visits and perform other essential work on weekends. Even when not scheduled to work on a weekend, Ms. Montigny and the Class Plaintiffs nevertheless sometimes had to work on Sunday to check on tests or labs requested for a patient, or to monitor patients' progress, to read weekend nurses' notes, and/or check for any changes in patients' medications or treatment regimens. It was impossible to punch in seven minutes prior to 8am the next day, look up all this information, rearrange her schedule for the day, research any new admissions that were assigned over the weekend, read all emails and messages, and coordinate with the office on visits.

89. Southcoast discouraged Ms. Montigny and the Class Plaintiffs from punching in while charting.

90. In order to comply with Southcoast's wishes, Ms. Montigny and Class Plaintiffs usually charted without punching in.

91. In addition, Southcoast automatically deducted a half hour of pay from Ms. Montigny's and each Class Plaintiff's timesheet every week for "lunch" whether or not each plaintiff stopped to take a lunch.

92. Usually, Ms. Montigny and the Class Plaintiffs were too busy taking care of patients to take lunch, and thus usually worked for Southcoast during lunch.

93. Southcoast knew and/or could have known that Ms. Montigny and the Class Plaintiffs were working during lunch and had to work during lunch.

94. Southcoast knew and/or could have known that Ms. Montigny and the Class Plaintiffs worked after punching out at night.  Southcoast knew and/or could have known that Ms. Montigny and the Class Plaintiffs sometimes worked on weekends.  Most of Ms. Montigny's and the Class Plaintiffs' work from home was through electronic systems which kept time records of all such remote work.

95. By automatically punching out Ms. Montigny and Class Plaintiffs for a lunch they did not actually take, Southcoast was automatically and systematically not paying Ms. Montigny and the Class Plaintiffs for this work.

96. Southcoast knew that Ms. Montigny and the Class Plaintiffs regularly worked over 40 hours per week.

97. Southcoast's failure to pay Ms. Montigny and the Class Plaintiffs wages for work performed violates the MWA for which all Defendants are jointly and severally liable.

Wherefore, Ms. Montigny and the Class Plaintiffs ask this Honorable Court to award them the value of all unpaid wages, liquidated damages, attorneys fees, and statutory pre-judgment interest.

### COUNT FIVE
### FAILURE TO PAY OVERTIME
### Minimum Fair Wages Act
### M.G.L. c. 151
*Montigny & Class Plaintiffs v. Defendants*

98. Plaintiffs repeat an incorporate by reference all allegations above and below as if restated here in full.

99. Neither Ms. Montigny nor the Class Plaintiffs are exempt from the wage and overtime requirements of the Massachusetts Minimum Fair Wages Act ("MFWA").

100.    Southcoast must pay Ms. Montigny and the Class Plaintiffs time-and-one-half for all time worked over the 40 hour per week mark in any given week.

101.    Ms. Montigny and the Class Plaintiffs regularly worked over 40 hours per week and were not paid for all hours they worked each week.

102.    Ms. Montigny and the Class Plaintiffs regularly worked at least an hour prior to arriving at their first patient's home.

103.    Southcoast knew Ms. Montigny and the Class Plaintiffs worked at least one hour prior to arriving at their first patient's home and still refused to pay Plaintiffs for that work.

104.    Southcoast automatically deducted a half hour of pay from Ms. Montigny's and each Class Plaintiff's timesheet every week for lunch whether or not the plaintiff stopped for lunch.

105.    Usually, Ms. Montigny and the Class Plaintiffs did not have time to take a lunch and thus worked during lunch.

106.    Southcoast knew that Ms. Montigny and the Class Plaintiffs usually did not stop lunch during the time they were punched out for "lunch."

107.    By automatically punching out Ms. Montigny and Class Plaintiffs for a lunch they did not actually take, Southcoast was automatically and systematically not paying Ms. Montigny and the Class Plaintiffs for this work.

108.    Ms. Montigny and the Class Plaintiffs regularly charted after seeing patients and were not paid for all time charting.

109.    Defendants did not pay Ms. Montigny and Class Plaintiffs overtime when they did extra work such as in-service training or precepting.

110.     Ms. Montigny and the Class Plaintiffs were discouraged from working overtime, and were discouraged from punching in while charting.

111.     Ms. Montigny and Class Plaintiffs usually charted without punching in.

112.     Because of Southcoast's use of an electronic medical records and electronic time-keeping software, Southcoast had the ability to monitor the amount of hours Ms. Montigny and the Class Plaintiffs were actually working each week.

113.     Southcoast knew that Ms. Montigny and the Class Plaintiffs regularly worked over 40 hours per week.

114.     Ms. Montigny and the Class Plaintiffs regularly worked over 40 hours per week and were not paid overtime for all hours they worked for the 40 hour per week mark each week.

115.     Southcoast knew that Defendants did not pay Ms. Montigny and the Class Plaintiffs overtime for all hours they worked over the 40 hour per week mark each week.

116.     Southcoast's failure to pay Ms. Montigny and the Class Plaintiffs wages for work performed over the 40 hour per week mark violates the MFWA for which all Defendants are jointly and severally liable.

117.     Southcoast's failure to pay Ms. Montigny and the Class Plaintiffs wages for work performed over the 40 hour per week was willful.

118.     Defendants are jointly and severally liable to Ms. Montigny and the Class Plaintiffs for their failure to pay overtime premium pay in an amount equal to such unpaid overtime premium pay.

119.     Defendants are jointly and severally liable to Ms. Montigny and the Class Plaintiffs for liquidated treble damages on unpaid overtime premium pay.

Wherefore, Ms. Montigny and the Class Plaintiffs ask this Honorable Court to award

them the value of all unpaid wages, all unpaid overtime wages, all liquidated damages

allowed under the law, as well as attorneys' fees, costs, interest, and all other relief this

Court deems just and proper.

## COUNT SIX
### FAILURE TO PAY OVERTIME
### Fair Labor Standards Act, 29 U.S.C § 201 et seq.
*Montigny & Class Plaintiffs v. Southcoast*

120.    Plaintiffs repeat and incorporate by reference all allegations above and below as if

fully set forth here.

121.    On information and belief, during the relevant time period, Southcoast was an

enterprise engaged in commerce or in the production of goods for commerce, as defined

by 29 U.S.C. § 201 *et seq.*

122.    During the relevant time period, Ms. Montigny and the Class Plaintiffs were

engaged in commerce or in the production of goods for commerce, as defined by 29

U.S.C. § 201 *et seq.*

123.    During the relevant time period, Southcoast suffered or permitted Ms. Montigny

and the Class Plaintiffs to work overtime.

124.    Pursuant to the FLSA, 29 U.S.C. § 207(a), Southcoast was required to pay Ms.

Montigny and the Class Plaintiffs overtime premium pay for all time they worked over 40

hours in a workweek.

125.    During the relevant time period, Southcoast regularly followed a policy and

practice of failing to pay Ms. Montigny and the Class Plaintiffs overtime premium pay

for all hours worked over 40 hours in a work week.

126.     Southcoast's failure to pay Ms. Montigny and the Class Plaintiffs overtime

premium pay during the relevant time period violates the FLSA.

127.     Southcoast acted willfully or with reckless disregard as to their obligation to pay

Ms. Montigny and the Class Plaintiffs overtime premium pay, and accordingly, the

violation was willful for purposes of the FLSA, 29 U.S.C. §§ 255(a) and 260.

128.     Southcoast is jointly and severally liable to Ms. Montigny and the Class Plaintiffs

under the FLSA for their failure to pay overtime premium pay in an amount equal to such

unpaid overtime premium pay.

129.     Southcoast is also jointly and severally liable to Ms. Montigny and the Class

Plaintiffs for liquidated damages on unpaid Overtime Premium Pay, as well as attorneys'

fees, costs, interest, and all other relief deemed just and proper.


Wherefore, Ms. Montigny and the Class Plaintiffs ask this Honorable Court to award

them the value of all unpaid wages, all unpaid overtime wages, all liquidated damages

allowed under the law, as well as attorneys' fees, costs, interest, and all other relief this

Court deems just and proper.

## COUNT SEVEN
### FAILURE TO PAY MINIMUM WAGE
### FAIR LABOR STANDARDS ACT, 29 U.S.C § 201 et seq.
*Montigny & Class Plaintiffs v. Southcoast*

130.     Plaintiffs repeat and incorporate by reference all allegations above and below as if fully set forth here.

131.     Pursuant to the FLSA, Southcoast was required to pay Ms. Montigny and the Class Plaintiffs at least the Federal Minimum Wage for all time that they worked for Southcoast each workweek.

132.     Southcoast was required to pay Ms. Montigny and the Class Plaintiffs at least the Federal Minimum Wage for all time that they worked for Southcoast in a timely manner; the failure to do so in any week amounted to a non-payment of such wages for that week.

133.     Southcoast willfully and repeatedly violated the provisions of the FLSA by failing to timely pay the Ms. Montigny and the Class Plaintiffs at least the Federal Minimum Wage for all time they worked for Defendants each workweek.

134.     Southcoast is liable to Ms. Montigny and Class Plaintiffs under the FLSA for their failure to timely pay at least Federal Minimum Wage for all time that Ms. Montigny and the Class Plaintiffs worked.

135.     Southcoast is liable to Ms. Montigny and Class Plaintiffs were for liquidated damages on the payments that Southcoast failed to pay in a timely manner, as well as attorneys' fees, costs, interest, and all other relief deemed just and proper.

Wherefore, Ms. Montigny and the Class Plaintiffs ask this Honorable Court to award

them the value of all unpaid wages, all unpaid overtime wages, all liquidated damages

allowed under the law, as well as attorneys' fees, costs, interest, and all other relief this

Court deems just and proper.

Respectfully submitted,
PLAINTIFFS,
SHANNON MONTIGNY,
*Plaintiff, on behalf of herself and all persons*
*similarly-situated,*
By Their Attorney,


Chip Muller, Esq. (BBO #672100)
Muller Law, LLC
47 Wood Avenue
Barrington, RI 02806
(401) 256-5171 (ph.)
(401) 256-5025 (fax)
chip@mullerlaw.com

Dated:    May 18, 2020

Plaintiffs, by and through their attorney, demand a TRIAL BY JURY on all counts so
triable.


Chip Muller, Esq. (BBO #672100)

20



# EXHIBIT C

| CIVIL TRACKING ORDER<br>(STANDING ORDER 1- 88) | DOCKET NUMBER<br>2073CV00368 | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|

| CASE NAME:<br>Montigny, Shannon vs. Southcoast Health System, Inc. et al | Marc J. Santos, Clerk of Court<br>Bristol County |
|---|---|

| TO:  Wade Broughman | COURT NAME & ADDRESS<br>Bristol County Superior Court - New Bedford<br>441 County Street, 1st floor<br>New Bedford, MA 02740 |
|---|---|

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

STAGES OF LITIGATION                                        DEADLINE

|  | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court |  | 09/08/2020 |  |
| Response to the complaint filed (also see MRCP 12) |  | 10/06/2020 |  |
| All motions under MRCP 12, 19, and 20 | 10/06/2020 | 11/05/2020 | 12/07/2020 |
| All motions under MRCP 15 | 10/06/2020 | 11/05/2020 | 12/07/2020 |
| All discovery requests **and depositions** served and non-expert depositions completed | 04/05/2021 |  |  |
| All motions under MRCP 56 | 05/04/2021 | 06/03/2021 |  |
| Final pre-trial conference held and/or firm trial date set |  |  | 10/01/2021 |
| Case shall be resolved and judgment shall issue by |  |  | 06/08/2022 |

**The final pre-trial deadline is not the scheduled date of the conference.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED<br>06/08/2020 | ASSISTANT CLERK<br>Jennifer A Sullivan | PHONE<br>(508)996-2051 |
|---|---|---|

Date/Time Printed: 06-08-2020 12:52:22                                                                 SCV02h  08/2018



**EXHIBIT D**

COMMONWEALTH OF MASSACHUSETTS

BRISTOL, SS                                    SUPERIOR COURT DEPARTMENT

|                                      |                                      |
|--------------------------------------|--------------------------------------|
| SHANNON MONTIGNY,                    |                                      |
|              Plaintiff,              |                                      |
| v.                                   | Civil Action No.  2073-cv-00368      |
| SOUTHCOAST HEALTH SYSTEM, INC.,      |                                      |
| KEITH HOVAN, AND WADE                |                                      |
| BROUGHMAN,                           |                                      |
|              Defendants.             |                                      |

## NOTICE OF APPEARANCE

In the above-captioned matter, please enter the appearance of Diane M. Saunders of the law firm Ogletree, Deakins, Nash, Smoak & Stewart, P.C. on behalf of Defendants Southcoast Health System, Inc., Keith Hovan and Wade Broughman.

Respectfully submitted,

SOUTHCOAST HEALTH SYSTEM, INC.,
KEITH HOVAN and WADE BROUGHMAN,

By their attorneys,

*Diane Saunders*

_____

Diane M Saunders, Esq. (BBO# 562872)
Alexandra E. Shaw (BBO# 694534)
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
One Boston Place, Suite 3500
Boston, MA 02108
Tel:  617-994-5700
Fax: 617-994-5701
diane.saunders@ogletreedeakins.com
alexandra.shaw@ogletreedeakins.com

Dated:  July 20, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2020, I served the within document by emailing a copy of the same as follows to counsel for Plaintiff, who has consented in writing to service of motions via electronic means as provided by Mass. Super. Ct. R. Rule 9A(b)(1)(iii):

Chip Muller, Esq.
Muller Law, LLC
47 Wood Avenue
Barrington, RI 02806
chip@mullerlaw.com

*Diane Saunders*

Diane M. Saunders

43546468.1

2



**EXHIBIT E**

COMMONWEALTH OF MASSACHUSETTS

BRISTOL, SS                                    SUPERIOR COURT DEPARTMENT

SHANNON MONTIGNY,

                 Plaintiff,

v.                                             Civil Action No.  2073-cv-00368

SOUTHCOAST HEALTH SYSTEM, INC.,
KEITH HOVAN, AND WADE
BROUGHMAN,

                 Defendants.

## <u>NOTICE OF APPEARANCE</u>

In the above-captioned matter, please enter the appearance of Alexandra E. Shaw of the

law firm Ogletree, Deakins, Nash, Smoak & Stewart, P.C. on behalf of Defendants Southcoast

Health System, Inc., Keith Hovan and Wade Broughman.

Respectfully submitted,

SOUTHCOAST HEALTH SYSTEM, INC.,
KEITH HOVAN and WADE BROUGHMAN,

By their attorneys,


_____/s/ Alexandra E. Shaw_____
Diane M Saunders, Esq. (BBO# 562872)
Alexandra E. Shaw (BBO# 694534)
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
One Boston Place, Suite 3500
Boston, MA 02108
Tel:  617-994-5700
Fax: 617-994-5701
diane.saunders@ogletreedeakins.com
alexandra.shaw@ogletreedeakins.com

Dated:  July 20, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2020, I served the within document by emailing a copy of the same as follows to counsel for Plaintiff:

Chip Muller, Esq.
Muller Law, LLC
47 Wood Avenue
Barrington, RI 02806
chip@mullerlaw.com


/s/ Alexandra E. Shaw_____
Alexandra E. Shaw


43546414.1

2



**EXHIBIT F**

COMMONWEALTH OF MASSACHUSETTS

BRISTOL, SS                                SUPERIOR COURT DEPARTMENT

SHANNON MONTIGNY,

                 Plaintiff,

v.                                         Civil Action No.  2073-cv-00368

SOUTHCOAST HEALTH SYSTEM, INC.,
KEITH HOVAN, AND WADE
BROUGHMAN,

                 Defendants.

### DEFENDANTS' ASSENTED-TO MOTION TO
### EXTEND TIME TO RESPOND TO COMPLAINT

Defendants Southcoast Health System, Inc., Keith Hovan, and Wade Broughman ("Defendants"), by and through their undersigned counsel, hereby move this Court for an order granting Defendants an extension of time from July 20, 2020 up to and including August 14, 2020 to answer, move or otherwise respond to Shannon Montigny's ("Plaintiff") Complaint. This extension is necessary to allow the undersigned counsel additional time to investigate the allegations in the Complaint and prepare responsive pleadings.

Counsel for Plaintiff has given his consent to this request.  Neither the Plaintiff nor the Court will be prejudiced by this extension of time, and this is Defendants' first such request.  In making this request, Defendants do not waive any defenses they may have based on jurisdiction, service of process, or any other basis.

WHEREFORE, Defendants respectfully request that the Court allow Defendants up to and including August 14, 2020 to answer, move or otherwise respond to Plaintiff's Complaint.

Respectfully submitted,

SOUTHCOAST HEALTH SYSTEM, INC.,
KEITH HOVAN and WADE BROUGHMAN,

By their attorneys,

*Diane Saunders*

_____

Diane M Saunders, Esq. (BBO# 562872)
Alexandra E. Shaw (BBO# 694534)
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
One Boston Place, Suite 3500
Boston, MA 02108
Tel:  617-994-5700
Fax: 617-994-5701
diane.saunders@ogletreedeakins.com
alexandra.shaw@ogletreedeakins.com

Dated:  July 20, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2020, I served the within document by emailing a copy of the same as follows to counsel for Plaintiff, who has consented in writing to service of motions via electronic means as provided by Mass. Super. Ct. R. Rule 9A(b)(1)(iii):

Chip Muller, Esq.
Muller Law, LLC
47 Wood Avenue
Barrington, RI 02806
chip@mullerlaw.com

*Diane Saunders*

Diane M. Saunders

43518404.1

2



**EXHIBIT G**

| CLERK'S NOTICE | DOCKET NUMBER<br><br>**2073CV00368** | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| CASE NAME:<br>Montigny, Shannon vs. Southcoast Health System, Inc. et al | Marc J. Santos, Clerk of Court<br>Bristol County |
|---|---|

| TO:<br>Diane Marjorie Saunders, Esq.<br>Ogletree, Deakins, Nash, Smoak & Stewart, P.C.<br>One Boston Place<br>Suite 3500<br>Boston, MA 02108 | COURT NAME & ADDRESS<br>Bristol County Superior Court - New Bedford<br>441 County Street, 1st floor<br>New Bedford, MA 02740 |
|---|---|

You are hereby notified that on 07/21/2020 the following entry was made on the above referenced docket:

Endorsement on Motion to extend time to respond to complaint (#5.0): ALLOWED
by assent

Judge: Yessayan, Hon. Raffi N

| DATE ISSUED<br><br>07/22/2020 | ASSOCIATE JUSTICE/ ASSISTANT CLERK<br><br>**Hon. Raffi N Yessayan** | SESSION PHONE#<br><br>**(508)996-2051** |
|---|---|---|

Date/Time Printed: 07-22-2020 09:23:26                                                    SCV016_X1\ 08/2014



**EXHIBIT H**

COMMONWEALTH OF MASSACHUSETTS

BRISTOL, SS                                    SUPERIOR COURT DEPARTMENT

SHANNON MONTIGNY,

                    Plaintiff,

v.                                             Civil Action No.  2073-cv-00368

SOUTHCOAST HEALTH SYSTEM, INC.,
KEITH HOVAN, AND WADE
BROUGHMAN,

                    Defendants.

## DEFENDANTS' NOTICE TO STATE COURT OF FILING OF NOTICE OF REMOVAL

Please take notice that Defendants Southcoast Health System, Inc., Keith Hovan and Wade Broughman ("Defendants") have, on July 29, 2020, filed a Notice of Removal of this action in the office of the Clerk of the United States District Court for the District of Massachusetts.  A copy of the Notice of Removal is attached hereto as Tab 1.

Please take further notice that, pursuant to 28 U.S.C. § 1446(d), the filing of said Notice of Removal in the United States District Court together with the filing of a copy of that Notice of Removal with the Clerk of this Court, effects removal of this action to the United States District Court, and this Court may proceed no further unless and until the case is remanded.

Respectfully submitted,

DEFENDANTS SOUTHCOAST HEALTH
SYSTEM, INC., KEITH HOVAN, and WADE
BROUGHMAN,

By their attorneys,

*Diane Saunders*

_____
Diane M. Saunders, BBO #562872
Alexandra E. Shaw, BBO #694534
OGLETREE, DEAKINS, NASH, SMOAK
  & STEWART, P.C.
One Boston Place, Suite 3500
Boston, MA 02108
Tel. (617) 994-5700
Fax (617) 994-5701
diane.saunders@ogletree.com
alexandra.shaw@ogletree.com

Dated:  July 29, 2020

**CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2020, a true copy of the above document was served via
electronic mail upon counsel of record in this matter.

Chip Muller
Muller Law, LLC.
147 Wood Avenue
Barrington, RI 02806
chip@mullerlaw.com

*Diane Saunders*

_____
Diane M. Saunders, BBO #562872

43579000.1

2